UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: GINGER KAYE KORNEGAY | CASE NO. 11-00067-KMS |
| DEBTOR | CHAPTER 13 |
| COUNTRY CREDIT, LLC | PLAINTIFF |
| V. | ADV. NO. 11-00042-KMS |
| GINGER KAYE KORNEGAY | DEFENDANT |

## MEMORANDUM OPINION

This matter came before the Court for trial on January 24, 2012, (the "Trial") on the Complaint Objecting to Dischargeability of a Debt (Adv. Dkt. No. 1) filed by Country Credit, LLC ("Country Credit") and the Answer to Complaint (Adv. Dkt. No. 3) filed by Ginger Kaye Kornegay ("Kornegay"). At Trial, Clinton Ashley Atkinson represented Country Credit and J. Thomas Ash represented Kornegay. By stipulation, the parties introduced six exhibits. These exhibits and the testimony of the parties were the only evidence presented at Trial. The Court, having considered the evidence, finds that the obligation is excepted from discharge under 11 U.S.C. § 523(a)(2)(B)[1] for the reasons set forth below.[2]

## I. JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Notice of the Trial was proper under the circumstances.

---

[1] Hereinafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code, unless otherwise noted.

[2] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

1

## II. FINDINGS OF FACT

On January 7, 2011, Kornegay filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi ("Court"). (Dkt. No. 1). On April 18, 2011, Country Credit filed an adversary complaint ("Complaint") (Adv. Dkt. No. 1) against Kornegay seeking a declaratory judgment that the indebtedness[3] owed by Kornegay to Country Credit is nondischargeable under 11 U.S.C. § 523(a)(2)(B).[4] The Complaint asserts that Kornegay "failed to properly disclose all her debts when she applied" for the Renewal Loan. (Compl. 1, ¶ V).

### A. The Renewal Loan

Kornegay was an existing customer of Country Credit when she contacted the company about a loan to pay for car repairs. Kornegay testified that, at the closing of the Renewal Loan, a Country Credit employee presented her with documents that were completed prior to her arrival, reviewed "how much I was getting, what I owed them, and then she "X"ed where I needed to sign and initial." Kornegay acknowledged that she did not read the documents before signing. She also testified that she was not asked any questions prior to signing; she was merely shown where to sign.

### B. Alleged Misrepresentations and Omissions

According to Country Credit, Kornegay failed to disclose dependents and an outstanding debt on her application for the Renewal Loan. If the dependents and the debt had been disclosed, Country Credit would not have made the loan.

---

[3] The evidence and testimony established that the debt in question was a renewal of an existing loan with new debt of $605.47 in addition to various other charges (the "Renewal Loan"). (Pl.'s Ex. 5).

[4] The Complaint referenced 11 U.S.C. § 523(a)(2) and (6); however, the parties did not address or provide any evidence regarding alleged claims under § 523(a)(2)(A) or (6). Further, § 523(a)(6) debts are dischargeable under § 1328(a). 11 U.S.C. § 1328(a)(2).

At the § 341 meeting of creditors,[5] Kornegay represented that her two nephews lived with her.[6] However, Kornegay's undisputed testimony at Trial established that on April 8, 2010,

---

[5] At the § 341 meeting of creditors, Kornegay testified under oath as follows:

S. Binning:    Do you have children?
GK: No sir.
            * * * *
S. Binning:    Ok, so you don't have any children living with you?
GK:    Ah- my nephews live with me. My nephews and my sister.

S. Binning:    Your tax return from 2009 says that you have 2 children living with you and that they are your sons.
GK:    They got that wrong ah- the lady that filled out my paperwork she put that they were my sons instead of newphews, but they audited me and found out that – that was their mistake. That was it Jackson Hewitt?

S. Binning:    Uh-huh
GK:    That was their mistake they made. She put that they were my sons and not my nephews. And so I proved that they were.

J.C. Bell:    These children lived with you all of 200_?
GK:    Yes sir they lived with since they been 3 months old.

J.C. Bell:    They were dependents? I other words, they were living with you?
GK:    Yes Sir.
S. Binning:    Ok

J.C. Bell: Your sister Cheryl?
GK:    Yes sir.
J.C. Bell:    She lives with you too?
GK:    Yes sir. She's been in and out of jail and in trouble and stuff you know so I took on the children when they were 3 months old and I have had them every since.

Unidentified person:    Twins?
GK: Yes ma'am. They are a handful.

S. Binning:    Ok. Let me show you something – the application that you signed.
GK:    Ok.

S. Binning:    When you were giving the application to Country Credit.
GK: Uh-huh.

S. Binning:    It says number of dependents and that is a 0. Can you explain to me why when you were asked the number of dependents you said 0?
GK:    Ah- no I couldn't really explain that, but I mean I didn't really fill out most of that information.

S. Binning:    Ok, but you signed it correct?
GK:    Yeah

S. Binning:    That is your signature?
GK:    That is my signature, yeah.

the date the Country Credit loan application was signed, she did not have any children living with her.[7] Country Credit also argues that Kornegay failed to disclose a debt owed to Hardy Wilson Hospital ("Hardy Wilson").[8] Although Kornegay acknowledged that the debt was outstanding at the time she signed the application for the Renewal Loan, she testified that Hardy Wilson was not collecting on the debt and she only listed it on her bankruptcy schedules because her attorney advised her to list anyone she might owe.

## C.  Country Credit's Loan Approval Policies

Stephen Binning ("Binning"), an owner of Country Credit, described the application process in detail explaining that it was a process that he devised. According to Binning, information is gathered from the borrower in an application[9] and then compared with the debtor's credit report. If the company decides to continue the application process, the potential borrower brings verification of income, residence, and other documents to the office where a Country Credit employee will show the potential borrower "the application that we [Country

---

      S. Binning:      Let me show you something else.
      GK:      Why did that have anything to do with the loan though.
      Unidentifiable:      Just answer the question.
      GK:      I am just asking.
      * * * *

Transcript of February 16, 2011 meeting of creditors, p. 5-7.

[6] Kornegay testified at Trial that she "had [her sister's twins] off and on for the past three years [because her] sister was in and out of jail." She further testified that the twins lived with her for two, full years. After that time, they lived with their mother, but "if something happened, [Kornegay] would step in again."

[7] Counsel for Country Credit raised two arguments asserting that Kornegay had children living with her at the time she signed the loan application: (1) 2007 – 2010 tax returns claiming two dependents; and (2) § 341 meeting of creditors testimony. Regarding the tax returns, Kornegay testified that the twins lived with her at least six months out of the year such that she could claim them as dependents on her return, but they were not living with her at the time she signed the loan application. *See supra* note 6.

[8] The Proof of Claim, in the amount of $25,705.40, filed by Hardy Wilson reflects numerous admissions to the hospital ranging from 2000 to 2009. The most recent charges were: 6/23/08 - $542.50; 1/21/09 - $2,750.25; 4/27-4/30/09 - $5,902.00; and 3/5/10 - $131.50.

[9] The information is obtained from the borrower either in person or by telephone depending on how she approaches the company.

4

Credit] have already filled out, they are shown that, we go over it again with them to verify that we've got the right numbers, the right information on there, everything on there is correct, and then we have them sign the [application and verification form]." A Country Credit employee uses the information obtained from the borrower to "work out a budget." The employee then reviews the budget with the borrower. Binning testified that:

> "Obviously, you can tell by the way the budget is situated, the way I set it up, their net disposable income is just above the new Country Credit payment and that is to show that that is important; there is an important relationship between those two numbers. The net disposable income has to be greater than the new Country Credit payment. Otherwise, we can't make the loan. We won't make the loan."

Once the budget is signed, and if everything is acceptable to Country Credit, the loan documents are printed, the terms are reviewed with the borrower and the borrower signs the note and related documents.

Misty King ("King"), Manager of Country Credit, testified that the number of dependents living in the household is important because it factors into the food and clothing expenses of the debtor and could "make or break the loan." According to King, Country Credit's normal practice is to add $100.00 per dependent to the budget for food expenses. King testified that if Kornegay had disclosed two dependents, Country Credit would not have approved the loan based on the data appearing in her budget because it would have resulted in a "negative net disposable income, [such that] she would not have enough money at the end of the month to afford the note."[10] Regarding the outstanding debt with Hardy Wilson, King did not specifically testify that Country Credit would have denied the loan if the debt had been disclosed but testified that it would be something that she needed to know before making the decision to approve the loan.

---

[10] The net disposable income on Kornegay's budget was $119.16. Adding two dependents, an additional $200.00 food expense, would result in a negative disposable income of ($80.84). (Pl.'s Ex. 4).

5

### III. CONCLUSIONS OF LAW

**A. 11 U.S.C. § 523(a)(2)(B)**

Section 523(a)(2)(B) excepts from discharge any debt:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --

use of a statement in writing[11] --

**(i)** that is materially false;

**(ii)** respecting the debtor's or an insider's financial condition;[12]

**(iii)** on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

**(iv)** that the debtor caused to be made or published with intent to deceive

11 U.S.C. § 523(a)(2)(B); *Matter of Norris*, 70 F.3d 27, 29 (5th Cir. 1995). To except the debt of Kornegay from discharge under § 523(a)(2)(B), Country Credit bears the burden of proving each of the required elements by a preponderance of the evidence.[13] *See Grogan v. Garner*, 498 U.S. 279, 287-88 (1991); *see also Young v. Nat'l Union Fire Ins. Co. of Pittsburg (In re Young)*, 995 F.2d 547, 549 (5th Cir. 1993); Gen. *Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F. 2d 367, 272 (5th Cir. 2005). Exceptions to discharge must be strictly construed against the creditor and liberally construed in favor of the debtor. *Lanier v. Futch (In re Futch)*, Adv. No. 09-00144-

---

[11] "As long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement to the non-dischargeability complaint under section 523(a)(2)(B) is met." *Tower Credit, Inc. v. Williams (In re Williams)*, 431 B.R. 150, 157 (Bankr. M.D. La. 2010) (*citing Cadle Co. v. Orsini*, 2007 WL 1006919, at *5 (E.D. Tex. 2007)). At Trial, Kornegay verified her signature on the promissory note, application and other loan documents. The parties do not dispute this requirement.

[12] "Section 523(a)(2)(B) applies not only to documents styled as 'Financial Statements', but to any false statements made in written loan applications." *FDIC v. Lefeve (In re Lefeve)*, 131 B.R. 588, 593 (Bankr. S.D. Miss. 1991). The parties do not dispute this requirement.

[13] "A fact is proven by a preponderance of the evidence if the Court finds it more likely than not the fact is true." *Lanier v. Futch, (In re Futch)*, Adv. No. 09-00144-NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011) (*citing EPA v. Sequa Corp. (In re Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 909-10 (5th Cir. 1993)).

NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011); s*ee Mammel v. Pierce (In re Pierce)*, Adv. No. 10-3408, 2011 WL 2312037, at *1 (Bankr. N.D. Tex. June 10, 2011); *Fezler v. David (In re Davis)*, 194 F.3d 570, 573 (5th Cir. 1999); *Hudson v. Raggio & Raggio (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997); *Jordan v. Se. Nat'l Bank (Matter of Jordan),* 927 F.2d 221, 224 (5th Cir.1991) (rationale of reading nondischargeability provisions narrowly "is to help preserve the Code's basic policy of giving an honest debtor a fresh start").

Country Credit established that Kornegay's loan application contained materially false statements about her financial condition, specifically that Kornegay failed to disclose an outstanding debt owed to Hardy Wilson. Kornegay testified that she did not read the loan documents. However, her indifference to the accuracy of the application indicates reckless disregard from which "intent to deceive [is] inferred."[14] *Byrd v. Bank of Miss.*, 207 B.R. 131, 138 (S.D. Miss. 1997) ("intent to deceive may be inferred from the totality of the circumstances") (*citing Jordan*, 927 F.2d 221 (5th Cir. 1991); *FDIC v. Lefeve (In re Lefeve)*, 131 B.R. 588 (Bankr. S.D. Miss. 1991); *see also Young*, 995 F.2d at 549 (intent to deceive may be inferred from use of a false financial statement to obtain credit)).

Country Credit also proved that it reasonably relied on the misrepresentations in Kornegay's loan application. The Fifth Circuit has articulated that in determining whether reliance was reasonable under § 523(a)(2)(B), "the bankruptcy court may consider, among other things, whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and

---

[14] Country Credit presented four documents signed by Kornegay and containing language attesting to the accuracy and completeness of the information provided. *See* (Application Pl.'s Ex. 1; Loan Application Addendum Pl.'s Ex. 2; Verification Form Pl.'s Ex. 3; Budget Pl's Ex. 4). The contents of documents signed by Kornegay should be attributed to Kornegay and entitled to great weight. *Tower Credit, Inc. v. Combs (In re Combs)*, Adv. No. 09-1082, 2010 WL 2106976, at *3 (Bankr. M.D. La. May 26, 2010).

whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993) (internal citations omitted); *see also Byrd,* 207 B.R. at 137. Although the testimony established that Country Credit did not follow its customary practice of reviewing the loan application for accuracy with the borrower before signing, no evidence was offered to establish that any "red flag" existed to alert Country Credit to the inaccuracy or to warrant further investigation.

The Court finds that Kornegay made a misrepresentation on her application for the Renewal Loan by omitting the debt to Hardy Wilson, that the intent to deceive can be inferred from Kornegay's actions and that Country Credit reasonably relied on the misrepresentation. Consequently, the debt owed to Country Credit is non-dischargeable.[15]

### B. Attorney's Fees

The Bankruptcy Code explicitly grants fees and costs to prevailing debtors:

> "(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court should not award such costs and fees if special circumstances would make the award unjust."

11 U.S.C. § 523(d). Although § 523(d) is not a basis for awarding attorney's fees and costs to a prevailing *creditor*, the creditor may be entitled to attorney's fees and costs if the creditor has a contractual right to them under state law. *Jordan*, 927 F.2d at 226-27 (Section 523(d) does not prevent award of attorney's fees and costs to creditors so entitled as a matter of contract under state law). Pursuant to the Disclosure Statement, Promissory Note, and Security Agreement, upon default by borrower, the lender is entitled to attorney's fees and court costs of thirty-three

---

[15]At Trial, Kornegay argued that portions of the indebtedness related to credit life and disability insurance should be dischargeable since Kornegay did not request these coverages in the spaces indicated on the face of the note. However, Kornegay signed a separate document (Insurance Application) requesting these coverages. This document was stipulated to be authentic and admissible in the Pretrial Order. (Adv. Dkt. No. 9).

and one-third percent (33 1/3%) of the unpaid balance.[16] (Pl.'s Ex. 5, at 2). Thus, Country Credit is entitled to attorney's fees and court costs in the amount of 33 1/3% of the unpaid balance.

## IV. CONCLUSION

Country Credit proved that Kornegay's debt is nondischargeable under § 523(a)(2)(B). Further, Country Credit is entitled to attorney's fees and costs pursuant to its contract and limited to thirty-three and one-third percent (33 1/3%) of the unpaid balance on Kornegay's account.

A separate judgment consistent with this opinion will be entered in accordance with Rule 7058 of the Federal Rules of Bankruptcy Procedure.

---

[16] The loan document states:

> DEFAULT AND ACCELERATION: Upon default by Borrower, Lender may (i) bring suit for the delinquent payments without accelerating the remaining balance and/or (ii) declare the remaining balance immediately due and payable, less any rebate of unearned Finance Charges as provided for above; and Borrower shall pay any court costs and attorneys fees of 33 1/3% of the unpaid balance. After contractual maturity, or after default and acceleration, Borrower shall pay Lender interest on the delinquent amount at the rate of 10% per annum.
>
> Borrower shall be in default upon (1) Failure to pay any payment in full; (2) Failure to perform any agreement herein; (3) Any representation made or furnished to Lender by Borrower proves to have been false in any material respect; (4) Loss, theft, substantial damages, destruction, sale or encumbrance to or of the Collateral, or the making of any levy, seizure or attachment thereof or thereon; (5) Death; (6) Lender reasonably deems itself insecure; (7) Failure to perform any agreement or covenant contained in the Deed of Trust.

(Pl.'s Ex. 5, at 2).